Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN PHILLIPS, individually and on behalf of all others similarly situated, | Case No. 3:23-cv-03781 |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiff*, | **DEMAND FOR JURY TRIAL** |
| v. | |
| BROOKLYN BEDDING LLC, | |
| *Defendant*. | |

Class Action Complaint                                    Case No. 3:23-cv-03781

# Table of Contents

I.      Introduction. ........................................................................................................ 1

II.     Parties .................................................................................................................. 4

III.    Jurisdiction and Venue. ...................................................................................... 4

IV.     Facts. ................................................................................................................... 5

        A.      Defendant's fake prices and fake discounts. ........................................... 5

        B.      Defendant's advertisements are unfair, deceptive, and unlawful. .............. 13

        C.      Defendant's advertisements harm consumers. ....................................... 14

        D.      Plaintiff was misled by Defendant's misrepresentations. ...................... 15

        E.      Defendant breached its contract. ........................................................... 16

        F.      No adequate remedy at law. .................................................................. 17

IV.     Class action allegations. ................................................................................... 17

V.      Claims. .............................................................................................................. 19

        First Cause of Action: Violation of California's False Advertising Law Bus. & Prof.
                Code §§ 17500 & 17501 et. seq. .................................................................. 19

        Second Cause of Action: Violation of California's Consumer Legal Remedies Act .............. 20

        Third Cause of Action: Violation of California's Unfair Competition Law........................... 23

        Fourth Cause of Action: Breach of Contract.......................................................... 24

        Fifth Cause of Action: Breach of Express Warranty ............................................. 25

        Sixth Cause of Action: Breach of Implied Warranty .............................................. 26

        Seventh Cause of Action: Quasi-Contract/Unjust Enrichment ............................... 27

        Eighth Cause of Action: Negligent Misrepresentation ........................................... 27

        Ninth Cause of Action: Intentional Misrepresentation ........................................... 28

VI.     Relief. ................................................................................................................ 29

VII.    Demand for Jury Trial........................................................................................ 29

1

**I.     Introduction.**

2          1.     Advertised "sale" prices are important to consumers.  Consumers are more likely to

3   purchase an item if they know that they are getting a good deal.  Further, if consumers think that a

4   sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something

5   else.

6          2.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with

7   made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

8          3.     Section 17500 of California's False Advertising Law prohibits businesses from

9   making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code

10  § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is

11  not.

12         4.     Moreover, Section 17501 of California's False Advertising Law provides that "[n]o

13  price shall be advertised as a former price … unless the alleged former price was the prevailing

14  market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof.

15  Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also

16  specifically prohibits this particular flavor of fake discount (where the advertised former price is not

17  the prevailing price during the specified timeframe).

18         5.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods

19  or services with the intent not to sell them as advertised" and specifically prohibits "false or

20  misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

21  Cal. Civ. Code § 1770(a)(9), (13).

22         6.     Moreover, the Federal Trade Commission's regulations prohibit false or misleading

23  "former price comparisons," for example, making up "an artificial, inflated price … for the purpose

24  of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also

25  prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for

26  example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being

27  charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

28

7.     So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.     Defendant Brooklyn Bedding LLC ("Defendant" or "Leesa") sells and markets mattresses and bedding products online through the Leesa brand and website, www.leesa.com ("Leesa Products" or "Products").

9.     On its website, Defendant lists purported "regular" prices and advertises purported "Limited Time" discounts from those "regular" prices.  These include "LIMITED TIME" discounts offering "up to $X off" and "X% off".  Defendant uses countdown clocks to represent that its sales are on the verge of ending.  Defendant also advertises that its Products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font.  Examples are shown below:





10.     Far from being time-limited, however, Defendant's discounts are *always* available. As a result, everything about Defendant's price and purported discount advertising is false. The "regular" prices Defendant advertises are not actually Defendant's "regular" prices, because Defendant's Products are *always* available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor

are the purported discounts "LIMITED TIME" or "EXPIRING SOON"—quite the opposite, they are always available.

11.    As described in greater detail below, Mr. Phillips bought items from Defendant from its website, www.leesa.com.  When Mr. Phillips made his purchase, Defendant advertised that a sale was going on, and so Defendant represented that the Products Mr. Phillips purchased were being offered at a steep discount from their purported "regular" prices that Defendant advertised.  And based on Defendant's representations, Mr. Phillips believed that he was purchasing Products whose regular price and market value were the purported "regular" price that Defendant advertised, that he was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Mr. Phillips to buy from Defendant when he did.

12.    In truth, however, the representations Mr. Phillips relied on were not true.  The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time-limited.  Had Defendant been truthful, Mr. Phillips and other consumers like him would not have purchased the Products, or would have paid less for them.

13.    Plaintiff brings this case for himself and the other customers who purchased Leesa Products.

**II.    Parties**

14.    Plaintiff Sean Phillips is domiciled in San Francisco, California.

15.    The proposed class includes citizens of every state.

16.    Defendant Brooklyn Bedding LLC is an Arizona limited liability company with its principal place of business at 5301 W Bethany Home Road, Glendale, Arizona 85301.

**III.    Jurisdiction and Venue.**

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.    The Court has personal jurisdiction over Defendant because Defendant sold Leesa Products to consumers in California, including to Plaintiff.

19.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Leesa Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

20.    Divisional Assignment.  This case should be assigned to the San Francisco/Oakland division.  *See* L.R. 3-2(c).  A substantial part of the events giving rise to the claims occurred in San Francisco, California.

**IV.    Facts.**

    **A.    Defendant's fake prices and fake discounts.**

21.    Defendant Brooklyn Bedding manufactures, distributes, markets, and sells mattresses and bedding products.  Defendant sells its Products directly to consumers through its website, www.leesa.com.

22.    On its website, Defendant creates the false impression that its Products' "regular" prices are higher than they truly are.

23.    At any given time, on its website, Defendant advertises steep discounts on its Products.  These discounts always offer "X%" or "$X" off the "regular" prices Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant prominently claims they are "LIMITED TIME" or "EXPIRING SOON."  And it advertises these discounts extensively: on an attention-grabbing banner on every webpage of its website; in a large banner image on its homepage; on the products listing pages, next to images of each Product; on the individual product pages for each Product.  Example screenshots are provided on the following pages:

1
2
3
4
5
6
7
8
9
10



11

*Captured on January 19, 2021*

12
13
14
15
16
17
18
19
20



21

*Captured on May 15, 2021*

22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9



10

*Captured on September 4, 2021*

11
12
13
14
15
16
17
18
19
20
21



22

*Captured on February 25, 2022*

23
24
25
26
27
28



*Captured on June 17, 2022*



*Captured on December 1, 2022*



*Captured on March 27, 2023*



*Captured on July 25, 2023*



*Captured on May 21, 2021*

*Captured on July 25, 2023*

24.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales expire on a particular date or when the countdown clock expires, for example: "Offer valid 4/4/23 at 8:00 AM ET – 5/2/23 8:00 AM ET."  To reasonable consumers, this means that after the

specified date, Defendant's Products will no longer be on sale and will retail at their purported regular price.  But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

25.     For example, on April 19, 2023, Defendant advertised a purportedly time-limited sale that was "valid 4/4/23 at 8:00 AM ET – 5/2/23 8:00 AM ET."

**Spring Refresh Sale Offer Terms**
Offer valid 4/4/23 at 8:00 AM ET – 5/2/23 8:00 AM ET

**Up to $700 Off Select Mattresses + 2 Free Pillows (Up to $120 Value)**
Discount automatically applied to the Studio, Original, Original Hybrid, Sapira Hybrid, and Legend Hybrid mattresses. Two free Down Alternative Pillows will be added to your cart; however, these items are not eligible for free returns or warranty claims. Excludes Bundles, Youth, Kids, and Trundle mattresses.

**Up to 20% Off Select Bedding**
Discount automatically applied to bedding.

*Captured on April 19, 2023*

26.     However, on May 3, 2023, the day that the time-limited sale was supposed to have ended, Defendant advertised the same sale with a new expiration date, 6/6/23.

**Memorial Day Sale Offer Terms**
Offer valid 5/2/23 at 8:00 AM ET – 6/6/23 8:00 AM ET

**Save up to $820: Up to $700 Off Mattresses + 2 Free Pillows (Up to $120 Value)**
Discount automatically applied to the Studio, Original, Original Hybrid, Sapira Hybrid, and Legend Hybrid mattresses. Two free Down Alternative Pillows will be added to your cart; however, these items are not eligible for free returns or warranty claims. Excludes Bundles, Youth, Kids, and Trundle mattresses.

**Up to 20% Off Select Bedding**
Discount automatically applied to bedding.

*Captured on May 3, 2023*

27.     To confirm that Defendant always offers discounts off of purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1]  Defendant's sales have persisted continuously since at least January 1, 2020.  For example, 54 randomly selected screenshots of Defendant's website, www.leesa.com, were collected from the Internet Archive's Wayback Machine, from the 2020-2022 period.  In addition, 46 additional screenshots from the www.leesa.com website were captured in 2023 by visiting the website and recording screenshots. One hundred percent of the 100 randomly selected screenshots of Defendant's website, captured on the Wayback Machine and directly on the website, displayed a purportedly time-limited discount.

28.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the "limited time" promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

29.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the "regular" prices Defendant advertises are Defendant's former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect).  In other words, reasonable consumers reasonably believe that the "regular" prices Defendant advertises represent the amount that consumers formerly had to pay for Defendant's goods, before the limited-time sale began.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the "regular" price to get the item and did not have the opportunity to get a discount from that "regular" price.

30.     Reasonable consumers also reasonably believe that the "regular" prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those "regular" prices in the amounts advertised.  In truth, however, Defendant *always* offers discounts off the purportedly "regular" prices

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The "regular" prices Defendant advertises are not actually Defendant's "regular" or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are *always* available for less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts "LIMITED TIME" or "EXPIRING SOON"—quite the opposite, they are always available.

> **B.**    **Defendant's advertisements are unfair, deceptive, and unlawful.**

31.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

32.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

33.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

34.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

35.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

36.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises "regular" prices that are not its true "regular" prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C.     Defendant's advertisements harm consumers.**

37.     Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the "regular" prices at which Defendant usually sells its Products; that these are former prices that Defendant sold its Products at before the time-limited discount was introduced.

38.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

39.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

40.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a

_____

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

41.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

42.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

### D.     Plaintiff was misled by Defendant's misrepresentations.

43.     On May 27, 2021, Mr. Phillips purchased a Leesa Hybrid Mattress and a Two-Pack of Down Alternative Pillows from Defendant's website. He made this purchase while living in San Francisco, California. In the email order confirmation that Defendant sent to Mr. Phillips, Defendant represented the Leesa Hybrid Mattress had a regular price of $1,799, and that Mr. Phillips was receiving a discount of $359.80. Defendant also represented that the pillows had a regular price of $29, and that Mr. Phillips was receiving a discount of $29. Defendant represented that the Products had a certain regular price and that Mr. Phillips was receiving a substantial discount for the items that he purchased.[5]

44.     Mr. Phillips read and relied on Defendant's representations on the website and email confirmation, specifically that the Products were being offered at a discount for a limited time and had the "regular" prices listed above. Based on Defendant's representations described and shown

---

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

[5] In addition to the advertised discount on Defendant's website, Mr. Phillips also applied coupon code from Wirecutter for his purchase.

above, Mr. Phillips reasonably understood that the Products he was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published "regular" price, that this "regular" price was the market value of the Products that he was buying, that he was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). He would not have made the purchase if he had known that the Products were not discounted as advertised, and that he was not receiving the advertised discount.

45.    Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if he could feel sure that Defendant's "regular" prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's "regular" prices, discounts, and sales are not false or deceptive. Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products he would like to purchase.

**E.    Defendant breached its contract.**

46.    When Mr. Phillips purchased and paid for the Leesa Products he bought as described above, he accepted offers that Defendant made, and thus, a contract was formed at the time that he made a purchase. The offer was to provide Products having a particular listed regular price and market value, and to provide that Product at the discounted price advertised on the website.

47.    Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which are shown above). Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant, and the prices paid by Mr. Phillips (also shown above). For example, Defendant offered to provide (among other things) the Leesa Hybrid Mattress with a market value of $1,799, for a discounted price of $1,439.20; and to provide a discount of $359.80.

48.    The regular price and market value of the items Mr. Phillips would receive, and the amount of the discount he would be provided off the regular price of those items, were specific and material terms of the contract.

49.     Mr. Phillips performed his obligations under the contract by paying for the items he purchased.

50.     Defendant breached its contract by failing to provide Mr. Phillips with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

**F.     No adequate remedy at law.**

51.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

52.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.  As a second example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

53.     In addition, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**IV.     Class action allegations.**

54.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Leesa Products advertised at a discount on Defendant's website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Leesa Products advertised at a discount on Defendant's website.

55.    The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability**

56.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

57.    Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions**

58.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy**

59.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Leesa Products advertised at a discount from Defendant.  There are no conflicts of interest between Plaintiff and the class.

1

*Superiority*

2     60.    A class action is superior to all other available methods for the fair and efficient

3  adjudication of this litigation because individual litigation of each claim is impractical.  It would be

4  unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits,

5  every one of which would present the issues presented in this lawsuit.

6  **V.    Claims.**

7  <u>**First Cause of Action**</u>**:**

8  **Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

9  **(By Plaintiff and the California Subclass)**

10     61.    Plaintiff incorporates each and every factual allegation set forth above.

11     62.    Plaintiff brings this cause of action on behalf of himself and members of the

12  California Subclass.

13     63.    Defendant has violated Sections 17500 and 17501 of the Business and Professions

14  Code.

15     64.    Defendant has violated, and continues to violate, Section 17500 of the Business and

16  Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass

17  members.

18     65.    As alleged more fully above, Defendant advertises former prices along with

19  discounts.  Defendant does this, for example, by crossing out a higher price (e.g., ~~$1049~~) and

20  displaying it next to a lower, discounted price.  Reasonable consumers would understand prices

21  denoted as "regular" prices from which time-limited discounts are calculated to denote "former"

22  prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

23     66.    The prices advertised by Defendant are not Defendant's "regular" prices.  In fact,

24  those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the

25  product in question), because there is always a heavily-advertised promotion ongoing entitling

26  consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of

27  the Products.  Accordingly, Defendant's statements about the former prices of its Products, and its

28  statements about its discounts from those former prices, were untrue and misleading.  In addition,

Defendant's statements that its discounts are "limited time" and only "valid" for a certain time period are false and misleading too.

67.     In addition, Defendant has violated, and continues to violate, Section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendant's advertised "regular" prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

68.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Leesa Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

69.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Leesa Products.

70.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

71.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Leesa Products if they had known the truth, and/or (b) they overpaid for the Products because the Leesa Products were sold at a price premium due to the misrepresentation.

### **Second Cause of Action:**

### **Violation of California's Consumer Legal Remedies Act**

### **(by Plaintiff and the California Subclass)**

72.     Plaintiff incorporates each and every factual allegation set forth above.

73.     Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

74.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

75.    Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

76.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

77.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

78.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

79.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

80.    Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

81.    And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (e.g., "Presidents Day Sale," when in fact the sale is ongoing and not limited to Presidents Day).

82. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

83. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Leesa Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

84. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Leesa Products.

85. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

86. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Leesa Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

87. Accordingly, pursuant to California Civil Code § 1780(a)(2), Mr. Phillips, on behalf of himself and all other members of the subclass, seeks injunctive relief.

88. CLRA § 1782 NOTICE. On July 21, 2023, a CLRA demand letter was sent to Defendant's registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant does not have a California headquarters. If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

89. A CLRA venue declaration is attached.

1

2

3

**Third Cause of Action**:

**Violation of California's Unfair Competition Law**

**(by Plaintiff and the California Subclass)**

4      90.    Plaintiff incorporates each and every factual allegation set forth above.

5      91.    Plaintiff brings this cause of action on behalf of himself and members of the

6  California Subclass.

7      92.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in

8  unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

9      *The Unlawful Prong*

10     93.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged

11 above and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating the

12 FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and

13 prohibits the dissemination of false advertisements.  15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a).  As the

14 FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA.  16 C.F.R.

15 § 233.1, § 233.2.

16     *The Deceptive Prong*

17     94.    As alleged in detail above, Defendant's representations that its Products were on sale,

18 that the sale was limited in time, that the Products had a specific regular price, and that the customers

19 were receiving discounts were false and misleading.

20     95.    Defendant's representations were misleading to Plaintiff and other reasonable

21 consumers.

22     96.    Plaintiff relied upon Defendant's misleading representations and omissions, as

23 detailed above.

24     *The Unfair Prong*

25     97.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising

26 that its Products were on sale, that the sale was limited in time, that the Products had a specific

27 regular price, and that the customers were receiving discounts.

28

98.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

99.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

100.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

101.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

102.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Leesa Products.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

103.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Leesa Products.

104.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

105.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Leesa Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

**Fourth Cause of Action:**

**Breach of Contract**

**(by Plaintiff and the Nationwide Class)**

106.    Plaintiff incorporates each and every factual allegation set forth above.

107.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Subclass.

108.    Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

109.    The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

110.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

111.    The specific discounts were a specific and material term of each contract.

112.    Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

113.    Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount.  Defendant did not provide the discount that it had promised.

114.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial**.**

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the California Subclass)**

115.    Plaintiff incorporates each and every factual allegation set forth above.

116.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

117.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Leesa Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

118.    This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

119.    In fact, the Leesa Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

120.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on July 21, 2023.

121.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Leesa Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

### Sixth Cause of Action:

### Breach of Implied Warranty

### (by Plaintiff and the California Subclass)

122.    Plaintiff incorporates each and every factual allegation set forth above.

123.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

124.    As described in greater detail above, Defendant impliedly warranted that the Leesa Products had a market value equal to the regular price displayed on Defendant's website.

125.    This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

126.    In fact, the Leesa Products did not have a market value equal to the regular price displayed.  Thus, the warranty was breached.

127.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on July 21, 2023.

128.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Leesa Products if they had known the truth, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

**Seventh Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiff and the Nationwide Class)**

129.    Plaintiff incorporates each and every factual allegation in paragraphs 1-45, 51-60 above.

130.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of himself and the California Subclass.

131.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Leesa Products and to pay a price premium for these Products.

132.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

133.    Plaintiff and the class seek restitution.

**Eighth Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

134.    Plaintiff incorporates each and every factual allegation set forth above.

135.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

136.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

137.    These representations were false.

138.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

139.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

140.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Leesa Products.

141.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

142.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Leesa Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## Ninth Cause of Action:

## Intentional Misrepresentation

### (by Plaintiff and the California Subclass)

143.    Plaintiff incorporates each and every factual allegation set forth above.

144.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

145.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

146.    These representations were false.

147.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

148.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

149.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Leesa Products.

150.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

151.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Leesa Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## VI.    Relief.

152.    Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## VII.    Demand for Jury Trial.

153.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: July 28, 2023                                Respectfully submitted,

By: /s/ *Christin Cho*
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com

1
2
3

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

4

*Attorneys for Plaintiff*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28